UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CORNEILLE NANGAA YOBELUO** )<br>    34 Tshatshi Avenue )<br>    Kinshasa / Gombe )<br>    Democratic Republic )<br>    of the Congo )<br>  )<br>             *Plaintiff,* )<br>  )<br>    v. )<br>  )<br>**BRADLEY T. SMITH** )<br>**in his official capacity as** )<br>    **Acting Director of the United States** )<br>    **Department of the Treasury** )<br>    **Office of Foreign Assets Control** )<br>    1500 Pennsylvania Avenue, NW )<br>    Freedman's Bank Building )<br>    Washington, D.C. 20220 )<br>  )<br>             *Defendant,* )<br>  )<br>    and )<br>  )<br>**THE UNITED STATES DEPARTMENT** )<br>**OF THE TREASURY, OFFICE OF FOREIGN** )<br>**ASSETS CONTROL** )<br>    1500 Pennsylvania Avenue, NW )<br>    Freedman's Bank Building )<br>    Washington, D.C. 20220 )<br>  )<br>             *Defendant.* )<br>  ) | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>CIV. NO._____<br><br>ECF |

Plaintiff Corneille Nangaa Yobeluo ("Nangaa") brings this Complaint for Declaratory and Injunctive Relief against Defendants the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") and its Acting Director, Bradley T. Smith, and in support of this Complaint alleges the following:

## INTRODUCTION

1. On August 31, 2021, the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") denied Nangaa's delisting petition seeking his rescission of his designation under Executive Order ("E.O.") 13413, as amended, determining that Nangaa continues to meet the criteria for designation under that authority. Defendants' denial decision flies in the face of the substantial arguments and evidence before OFAC showing that Nangaa did not meet the original criteria for designation under E.O. 13413 and that, regardless, there had been a change of circumstances negating the basis for his initial designation. Defendants' denial of Nangaa's delisting petition violates the law and demands immediate reversal, particularly in light of the considerable harm imposed on Nangaa as a result of his unlawful designation.

2. Nangaa is the President of the National Independent Electoral Commission ("CENI") of the Democratic Republic of the Congo ("DRC"). In this role, Nangaa was responsible for shepherding the first successful democratic transition of power in decades in the DRC, as he organized, facilitated, and oversaw the DRC's 2018 general elections. The United States government—amongst other world powers—"welcomed" the results of this election.

3. Despite Nangaa's critical role in facilitating historic elections in the DRC, Defendants—in response to the wrongful allegations of fraud directed by one of the losing political parties in said election and without any credible evidence—imposed sanctions on Nangaa and other top election officials at the CENI for purportedly engaging in actions or policies that undermine democratic processes or institutions in the DRC. Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, Treasury Sanctions Congolese Officials Responsible for Undermining DRC Elections (March 21, 2019). To support its designation action, OFAC relied on fantastical claims originating from dubious sources intent on

undermining the DRC's electoral success. Indeed, OFAC does not appear to have undertaken any independent assessment to verify whether these spurious allegations were true.

4. In response to this wrongful designation, Nangaa used all lawful means to contest OFAC's sanctions—litigating the matter; seeking delisting through OFAC's administrative processes; and requesting from the agency information relating to the factual basis for its action, including the evidence relied upon by OFAC in support of its designation decision.

5. In his delisting petition, Nangaa made two specific arguments consistent with OFAC's delisting procedures. First, Nangaa argued that there was an insufficient basis for his designation under E.O. 13413, as the information relied upon by OFAC was erroneous. To support this argument, Nangaa produced voluminous documentation—much of it consisting of official documentation from the DRC's government—showing that OFAC's allegations were false and that he had not engaged in the conduct alleged by the agency. Second, Nangaa argued that there had been a change in circumstances negating the basis for the designation insofar as the DRC had held successful general elections under Nangaa's auspices and Nangaa intended to resign his position as CENI's President.

6. OFAC's denial letter dismissed these arguments without fair consideration. According to OFAC, Nangaa "[did] not provide[] credible arguments or evidence establishing that an insufficient basis exists for the designation or that the circumstances resulting in the designation no longer apply." Exhibit A-OFAC Denial Letter. OFAC's denial letter entirely failed to identify the reasons for OFAC making such conclusions, nor did it identify how it assessed that the arguments and the evidence provided by Nangaa were not credible.

7. OFAC also denied Nangaa's delisting petition without providing the basis for its determination that Nangaa continues to meet the criteria for designation under E.O. 13413, as

undermining the DRC's electoral success. Indeed, OFAC does not appear to have undertaken any independent assessment to verify whether these spurious allegations were true.

4. In response to this wrongful designation, Nangaa used all lawful means to contest OFAC's sanctions—litigating the matter; seeking delisting through OFAC's administrative processes; and requesting from the agency information relating to the factual basis for its action, including the evidence relied upon by OFAC in support of its designation decision.

5. In his delisting petition, Nangaa made two specific arguments consistent with OFAC's delisting procedures. First, Nangaa argued that there was an insufficient basis for his designation under E.O. 13413, as the information relied upon by OFAC was erroneous. To support this argument, Nangaa produced voluminous documentation—much of it consisting of official documentation from the DRC's government—showing that OFAC's allegations were false and that he had not engaged in the conduct alleged by the agency. Second, Nangaa argued that there had been a change in circumstances negating the basis for the designation insofar as the DRC had held successful general elections under Nangaa's auspices and Nangaa intended to resign his position as CENI's President.

6. OFAC's denial letter dismissed these arguments without fair consideration. According to OFAC, Nangaa "[did] not provide[] credible arguments or evidence establishing that an insufficient basis exists for the designation or that the circumstances resulting in the designation no longer apply." Exhibit A-OFAC Denial Letter. OFAC's denial letter entirely failed to identify the reasons for OFAC making such conclusions, nor did it identify how it assessed that the arguments and the evidence provided by Nangaa were not credible.

7. OFAC also denied Nangaa's delisting petition without providing the basis for its determination that Nangaa continues to meet the criteria for designation under E.O. 13413, as

amended. Nangaa's delisting matter included multiple submissions to the agency—the contents of which contained substantive arguments rebutting the basis for Nangaa's initial designation and supporting evidence from the DRC's government and other credible sources. In response, however, OFAC's denial merely asserts a conclusory statement of its position that Nangaa's arguments are not credible and that he failed to meet his burden under OFAC's delisting procedures.

8. Put plainly, OFAC has not seriously considered Nangaa's arguments, and the materials provided by him as part of his delisting matter, and has entirely failed to reason why it discounted the arguments and evidence presented in Nangaa's delisting petition. Instead, OFAC's sole notice to Nangaa of its denial contains a single cursory sentence stating that the evidence in OFAC's possession continued to support the initial designation.

9. This Court should not abide by a lawless process that predetermines its outcomes irrespective of the argument and evidence before Defendants. Defendants have clearly engaged in action at odds with its obligations under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. Accordingly, Nangaa respectfully requests that this Court provide the requested relief.

## JURISDICTION AND VENUE

10. This action arises under the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

11. This Court may grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and Fed. R. Civ. P. 57. This Court may grant injunctive relief in accordance with Fed. R. Civ. P. 65.

12. Venue is proper in the District of Columbia as this is the district in which the events giving rise to the complaint occurred and in which Defendants reside. *See* 28 U.S.C. §§ 1391(b) and (e).

## THE PARTIES

13. Plaintiff Corneille Nangaa Yobeluo is and was at all times relevant herein a citizen of the Democratic Republic of the Congo. He is currently residing at 34 Tshatshi Avenue, Kinshasa/Gombe, DRC.

14. Nangaa is the President of CENI—the DRC's electoral commission charged with ensuring free and fair elections. In this role, Nangaa helped facilitate successful national democratic elections and the first democratic transition of power in the DRC.

15. Nangaa is subject to sanctions pursuant to E.O. 13413, as amended, and his name is included on OFAC's Specially Designated Nationals and Blocked Persons List ("SDN List").

16. Defendant OFAC is a federal administrative agency of the United States Department of the Treasury, 1500 Pennsylvania Ave., NW, Freedman's Bank Building, Washington D.C. 20220. OFAC is responsible for administering U.S. economic sanctions programs, including by designating persons pursuant to authorities contained in E.O. 13413, as amended, and regulating dealings with them under those authorities via 31 C.F.R. Parts 501 and 547, the "Reporting, Procedures, and Penalties Regulations," and the "Democratic Republic of the Congo Sanctions Regulations," respectively. OFAC was responsible for designating Nangaa under E.O. 13413, as amended, and for denying Nangaa's delisting petition.

17. Defendant Bradley T. Smith is the Acting Director of OFAC. The Director of OFAC is delegated all authorities provided to the Secretary of the Treasury under E.O. 13413, as amended. 31 C.F.R. § 547.802. Mr. Smith is sued in his official capacity.

# FACTUAL ALLEGATIONS

### A.  OFAC's March 21, 2019 Designation of Nangaa

18. On March 21, 2019, OFAC designated Nangaa under E.O. 13413, as amended, for allegedly engaging in actions or policies that undermine democratic processes or institutions in the DRC. Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, Treasury Sanctions Congolese Officials Responsible for Undermining DRC Elections (March 21, 2019). As a result of this designation, Nangaa's name was added to OFAC's SDN List.

19. The legal consequence of Nangaa's designation is that his property and interests in property within U.S. jurisdiction are blocked, and U.S. persons are prohibited from engaging in transactions or dealing with him. Moreover, U.S. and foreign persons that provide material assistance to Nangaa—including through provision of financial services or any other goods or services—are subject to designation under E.O. 13413, as amended, and could thus themselves be subject to blocking sanctions. *See* E.O. 13413, § 1(a)(ii)(F) (Oct. 27, 2006).

### B.  Disclosed Bases for Nangaa's Designation Under E.O. 13413

20. The legal basis for Nangaa's designation was OFAC's determination that he is responsible for or complicit in, or has engaged in, directly or indirectly, actions or policies that undermine democratic processes or institutions in the DRC. *See* Notice, U.S. Dep't of Treasury, Office of Foreign Assets Control, 84 FED. REG. 30804 (June 27, 2019).

21. OFAC issued a press release announcing Nangaa's designation that contained allegations purportedly related to the basis for the designation. Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, Treasury Sanctions Congolese Officials Responsible for Undermining DRC Elections (March 21, 2019). Specifically, OFAC alleged that Nangaa "and other CENI officials under his direction[] embezzled and misappropriated CENI

operational funds and undertook actions that slowed voter registration, facilitating election delays." *Id*. According to OFAC's press release, Nangaa "oversaw CENI officials using several shell companies to embezzle CENI operational funds for their own personal and political gain," including, for instance, by "enrich[ing] [himself] through the purchase and sale of gasoline for profit at the expense of CENI, which delayed registration in Kasai, an opposition stronghold . . ." *Id*. OFAC's press release further alleged that CENI officials under Nangaa's leadership "inflated by as much as $100 million the costs of the electronic voting machine contracts with the intent to use surplus funds for personal enrichment, bribes, and campaign costs to fund the election campaign of Kabila's candidate." *Id*. According to OFAC's press release, Nangaa allegedly "awarded an election-related contract and doubled the award amount on the understanding that the winning company would award the extra funds to a DRC company controlled by CENI leadership." *Id*. OFAC's press release also alleged that Nangaa "approved the withdrawal of CENI operation[al] funds for non-authorized budget items for personal use by DRC government employees" and "ordered CENI employees to fabricate expense receipts to cover spending gaps resulting from CENI funds being used for personal gain." *Id*. Finally, OFAC's press release alleged that Nangaa "delivered bribes to Constitutional Court justices to uphold a decision by CENI to delay DRC's 2016 elections." *Id*.

22.   On April 15, 2020, OFAC disclosed to Nangaa a redacted version of the administrative record underlying Nangaa's designation, including the redacted evidentiary memorandum that sets out the factual and legal basis for its determination that Nangaa meets the criteria for designation under E.O. 13413, as amended. Exhibit B—OFAC Evidentiary Memorandum.

23. The unredacted portions of OFAC's evidentiary memorandum appear to indicate that Nangaa was determined to meet the criteria for designation under E.O. 13413, as amended, on two separate bases: (1) Nangaa allegedly "has been involved in misappropriating funds from CENI . . . including the embezzlement of funds earmarked to procure voting machines . . ."; and (2) Nangaa allegedly "bribed Constitutional Court justices to gain judicial support for election delays." *Id*. The disclosed version of the evidentiary memorandum redacts the reasoned basis for these findings, as well as all of OFAC's supporting evidence.

  **C.** **Nangaa's Delisting Petition to OFAC**

24. On February 10, 2021, Nangaa filed a delisting petition to OFAC seeking the recission of his designation under E.O. 13413, as amended, and the removal of his name from OFAC's SDN List.

25. Nangaa's delisting petition was submitted pursuant to OFAC's own regulation setting forth delisting procedures and made two distinct arguments: (1) that the factual allegations in support of the designation were in error and, therefore, Nangaa did not meet the criteria for designation under E.O. 13413; and (2) that there had been a change in circumstances negating the basis for Nangaa's designation (i.e., that CENI had engineered the first democratic transition of power in decades in the country and that Nangaa intended to resign from his position as CENI's President in the immediate future).

26. In support of these two arguments, Nangaa provided substantive rebuttals to OFAC's allegations and offered ample supporting evidence for his arguments that he did not meet the criteria for designation under E.O. 13413. That supporting evidence included 1) the decisions of the DRC Constitutional Court to delay the 2018 DRC elections; a statement by CENI on OFAC's wrongful imposition of sanctions on Nangaa; internal documents identifying

8

the intensive deliberations over scheduling the DRC's 2018 general elections and the reasons for its delay; CENI's reports on the 2018 general elections, as presented to and approved by the DRC's legislative body; and information on Nangaa's intentions to resign as CENI's President immediately upon the DRC legislature's approval of a new candidate for the position. In total, Nangaa's delisting petition included more than 1,000 pages of documentary evidence rebutting OFAC's allegations, much of it from official sources, including from the DRC Government.

### D. OFAC's Denial of Nangaa's Delisting Petition

27. On August 31, 2021, OFAC denied Nangaa's delisting petition. In a letter to Nangaa's counsel, OFAC stated that "[a]fter reviewing the evidence in the record regarding [Nangaa's] designation as an SDN . . . OFAC has determined that [Nangaa] has not provided credible arguments or evidence establishing that an insufficient basis exists for the designation or that the circumstances resulting in the designation no longer apply." Exhibit A-OFAC Denial Letter.

28. OFAC's denial letter stated that "OFAC conducted a thorough review of its evidence and has reason to believe that [] Nangaa did in fact misappropriate state assets belonging to CENI and oversaw CENI officials who inflated the costs of voting machine contracts, which led to CENI postponing the 2016 presidential election due to a lack of funding and delays in voter registration . . ." OFAC also stated that it confirmed that Nangaa "enrich[ed] himself through the purchase and sale of gasoline for profit at the expense of CENI, which delayed registration in Kasai, DRC . . ." Exhibit A-OFAC Denial Letter.

29. OFAC's denial letter also stated that OFAC had confirmed that Nangaa "authorized CENI employees to make personal use of CENI operational funds and fabricated expense reports to cover the use of CENI funds for personal gain" and "bribed Constitutional

Court justices, which led to a breach in the Court's quorum provisions and the approval of CENI's case to delay the 2016 presidential election." Exhibit A-OFAC Denial Letter.

30. OFAC concluded its denial letter by stating that it had "found that [] Nangaa still meets the original criteria for designation pursuant to [E.O. 13413] despite his assertions that he fulfilled his CENI mandate and plans to resign from CENI and that [] Nangaa failed to demonstrate that the circumstances resulting in the designation no longer apply." Exhibit A-OFAC Denial Letter.

31. OFAC's denial letter did not identify any additional conduct or reasons for the denial beyond what was already stated in its press release and evidentiary memorandum with respect to the initial designation; instead, the denial letter merely stated that OFAC confirmed that conduct after its investigation.

32. OFAC also did not provide any reasoning which lead to its conclusory determinations that Nangaa's arguments and evidence were not credible nor how it reasoned that the circumstances underlying Nangaa's designation had not changed. OFAC further failed to produce the evidentiary memorandum underlying its denial decision.

**E.     Harm to Nangaa**

33. Defendants' unlawful action has been personally, professionally, and financially ruinous to Nangaa. Specifically, Nangaa has been made the subject of an international boycott, as persons all over the world—including in the DRC—are subject to potential designation by Defendants for engaging in certain transactions or dealings with him.

34. The immediate legal consequence of Nangaa's designation is that all property and interests in property located within U.S. jurisdiction in which he has an interest are blocked, and U.S. persons are generally prohibited from engaging in any transactions or dealings with him. In

addition, foreign persons, including foreign financial institutions, are exposed to potential designation under E.O. 13413, as amended, for engaging in any transactions with Nangaa.

35. Due to the extraterritorial effects of U.S. sanctions, foreign parties have been reluctant to engage in transactions or dealings with Nangaa out of fear of retribution by Defendants. Furthermore, Nangaa faces grave financial hardship, as businesses and financial institutions continue to distance themselves from him to mitigate their own sanctions risk. For example, on or about April 10, 2019, Nangaa's account at Rawbank—a commercial bank in the DRC—blocked a legitimate transfer of 475,434,397 Congolese Francs ("CFR"), citing OFAC-administered sanctions as the reason for the blocking.

36. Defendants fully acknowledge the devastating costs imposed on designated persons, such as Nangaa. Defendants have openly lauded the fact that sanctions impose "professional, personal, and financial isolation" on designated persons. Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, U.S. Government Sanctions Organizations and Individuals in Connection with an Iranian Defense Entity Linked to Iran's Previous Nuclear Weapons Effort (March 22, 2019). Indeed, Defendants regard their sanctions as "force multipliers," so that, for instance, "international financial institutions frequently implement [U.S.] sanctions voluntarily, even when they are under no legal obligation to do so," by blacklisting designated persons from accessing their services. Examining Treasury's Role in Combating Terrorist Financing Five Years After 9/11, Hearing Before the Comm. on Banking, Housing and Urban Affairs, 109th Cong., S. Hrg. 109-1073 (statement of Adam J. Szubin).

## LEGAL CLAIMS

## COUNT I

## DEFENDANTS' DENIAL OF NANGAA'S DELISTING PETITION CONSTITUTES ARBTIRARY AND CAPRICIOUS AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT

37. Nangaa re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

38. Agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A).

39. OFAC promulgates procedures by which parties subject to its sanctions can petition for reconsideration of their designation and delisting from the SDN List. 31 C.F.R. § 501.807. Pursuant to OFAC's delisting procedures, a designated person "may submit arguments or evidence that the person believes establishes that insufficient basis exists for the designation" or "propose remedial steps on the person's part . . . which the person believes would negate the basis for designation." 31 C.F.R. § 501.807(a). Designated persons may also argue that there has been a change in circumstances rendering inapplicable the reasons for the original designation. 31 C.F.R. § 501.807.

40. By denying Nangaa's delisting petition—despite the considerable arguments and evidence presented to Defendants showing that there was an insufficient basis for his designation under E.O. 13413, as amended, and, alternatively, a change in circumstances negating the basis for his designation—Defendants acted inconsistent with their own regulation and in violation of the Administrative Procedure Act.

41. Defendants' denial of Nangaa's delisting petition based on conclusory statements failed to evidence reasoned decision-making and is thus arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law in violation of the APA.

## COUNT II

### DEFENDANTS' FAILURE TO PROVIDE ADEQUATE NOTICE OF THE REASONS FOR ITS DENIAL OF NANGAA'S DELISTING PETITION VIOLATES THE ADMINISTRATIVE PROCEDURE ACT

42. Nangaa re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

43. Agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or without observance of procedure required by law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A) and (D).

44. Pursuant to 5 U.S.C. § 555(e), prompt notice shall be given of the denial in whole or in part of a written application, petition, or other request of an interested person made in connection with an agency proceeding. Such notice must be accompanied by a statement of the grounds for denial.

45. By denying Nangaa's delisting petition without providing adequate notice of the grounds for its decision, Defendants violated the Administrative Procedure Act.

## RELIEF REQUESTED

Wherefore, Nangaa respectfully requests that this Court:

A. Issue an order vacating OFAC's denial of Nangaa's delisting petition;

B. Order Defendants to rescind Nangaa's designation under E.O. 13413;

C. Order Defendants to disclose the administrative record or any unclassified portions of such record to apprise Nangaa as to the reasons for its denial of his delisting petition;

D. Order Defendants to produce unclassified summaries of classified or otherwise privileged information contained in the administrative record, which—together with the unclassified version of the administrative record—fully apprises Nangaa as to the reasons for the denial of his delisting petition;

E. Order Defendants to provide alternative means by which Nangaa may be given sufficient notice as to the reasons for the denial of his delisting petition in the event that OFAC is unable to disclose those reasons through declassification or through unclassified summaries of classified or otherwise privileged information;

F. Grant an award to Nangaa of his costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 *et seq*., and any other applicable provision of law; and

G. Any other and further relief as the Court may deem proper.

Dated: November 10, 2021

Respectfully submitted,

/s/ Erich C. Ferrari
Erich C. Ferrari, Esq.
Ferrari & Associates, P.C.
1455 Pennsylvania Avenue, NW
Suite 400
Washington, D.C. 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: ferrari@falawpc.com
D.C. Bar No. 978253

                                      Attorney for Plaintiff
                                      *Corneille Nangaa Yobeluo*